**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RAFEEQ AHMED** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO.  20-3327** |
| | : | |
| **WEST COAST SERVICING INC.,** *et al.* | : | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                              **May 24, 2021**

A mortgage servicer and its lawyers allegedly provided highly inflated payoff numbers to a borrower facing a sheriff's sale on his mortgaged property in early 2020 after the state court entered judgment in April 2015 for failing to make mortgage payments. The borrower stayed an earlier sheriff's sale through a lengthy bankruptcy. The borrower contacted the servicer's lawyers asking for a payoff amount one day before the sheriff's sale scheduled after a bankruptcy court dismissed the borrower's bankruptcy. The servicer's lawyer responded with a voicemail identifying a payoff number which the borrower knew then, and claims now, to be wildly inflated. The borrower chose not to satisfy the judgment and the servicer's lawyers acquired the mortgaged property at sheriff's sale. The borrower promptly sued the servicer and its lawyers claiming their misrepresented payoff number violated the Fair Debt Collection Practices Act and Pennsylvania's Unfair Trade Practices and Consumer Protection Law. Based in part on admissions adduced in discovery, we today grant the servicer's and lawyers' motions for summary judgment on the Pennsylvania Consumer Protection Law claim as the borrower admits he never justifiably relied upon numbers he always knew to be false. We deny the motions on most of the borrower's debt collection practices claim requiring we resolve fact disputes after evaluating the credibility of witnesses in our upcoming non-jury trial.

I.     **Undisputed material facts.**[1]

Rafeeq Ahmed purchased a vacant lot on Horsham Road in Montgomery County, Pennsylvania in 2002.[2] He refinanced an existing mortgage and borrowed $135,000 from Fleet National Bank to build a home on the property.[3] He mortgaged the property to Fleet Bank and agreed to repay the $135,000 loan through monthly payments of $755.97 over thirty years beginning on October 1, 2003.[4] Fleet Bank required Mr. Ahmed to "pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges under the Note."[5] Fleet Bank further required Mr. Ahmed to "pay funds for Escrow Items" as defined in the mortgage.[6] PHH Mortgage Corporation acquired the servicing rights to the mortgage at a later point.[7]

Mr. Ahmed and his family lived at the Horsham Road property beginning in 2002.[8] Mr. Ahmed moved to a home he purchased in New Jersey in 2005 or 2006.[9] Mr. Ahmed moved to Texas three years later in 2009.[10] Mr. Ahmed leased his Horsham Road property to various tenants from 2009 to 2020.[11] Mr. Ahmed currently lives in Texas.[12]

### Mr. Ahmed defaults and the bank forecloses on the mortgage in state court.

Mr. Ahmed failed to make mortgage payments to PHH from February to June 2010.[13] On June 16, 2010, PHH sent Mr. Ahmed a Notice of Intention to Foreclose on the property due to $7,592.10 in missed payments.[14] PHH filed a foreclosure action on the property in the Montgomery County Court of Common Pleas in February 2012, alleging Mr. Ahmed owed $142,758.15 as of October 21, 2011.[15] On September 8, 2014, the state court entered judgment *in rem* in favor of PHH and against Mr. Ahmed for $177,360.36.[16]

On April 7, 2015, PHH obtained a writ of execution for the sale of the Horsham Road property.[17] The writ of execution totaled $189,115.48, including the $177,360.36 judgment plus interest of $11,755.12.[18]

### Mr. Ahmed's bankruptcy stayed the sheriff's sale.

Mr. Ahmed petitioned for relief under Chapter 13 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Texas on July 28, 2015.[19] Home Servicing, LLC—the mortgage servicer for the Horsham Road property at the time of his bankruptcy—filed a proof of claim for $150,986.06.[20] Mr. Ahmed made certain (but not all) payments to the bankruptcy trustee during his bankruptcy.[21] He also made eight payments to West Coast Servicing, who acquired the servicing rights to the mortgage in 2015.[22] Richard Bustamante, the West Coast servicing manager who handled the transfer of Mr. Ahmed's loan, admitted to a "clerical mistake" in applying some of Mr. Ahmed's payments.[23]

Mr. Ahmed attempted to sell the Horsham Road property for $240,000 in December 2018 and requested a payoff figure for the mortgage.[24] West Coast provided a $254,902 payoff amount.[25] Mr. Ahmed disagreed, believing he could pay off the debt for less than $200,000.[26] He spoke to West Coast representatives about his disagreement.[27] He admits knowing West Coast incorrectly reported his debt.[28] It seemingly did not matter then because he could not close on the sale of the Horsham Road property for unrelated reasons.[29]

Mr. Ahmed remained in bankruptcy and filed an adversary proceeding in the bankruptcy against West Coast on January 17, 2019, alleging West Coast misapplied payments and inaccurately calculated the payoff amount to be $254,902.31.[30] West Coast moved to dismiss Mr. Ahmed's adversary complaint.[31] Mr. Ahmed agreed to dismiss the adversary proceeding.[32] The

bankruptcy court dismissed Mr. Ahmed's adversary complaint.[33] The bankruptcy court further dismissed Mr. Ahmed's bankruptcy case in June 2019 for failure to pay the trustee.[34]

### *West Coast's post-bankruptcy execution efforts.*

Mortgage servicer West Coast retained the law firm of Norris McLaughlin, P.A. to recover on the September 8, 2014 judgment.[35] Norris McLaughlin employs at least three attorneys to handle foreclosure matters.[36] Norris McLaughlin's creditors' rights practice group—which involves representing creditors to enforce obligations owed to them—represents two to five percent of its overall practice.[37] Attorney Richard Somach led his law firm's efforts on West Coast's behalf.  He swore he handled "hundreds" of debt collection matters since he joined Norris McLaughlin in 2009 and these matters comprise "less than ten percent" of his practice.[38]

Attorney Somach obtained a writ of execution on September 30, 2019 for the sale of the Horsham Road property.[39] The writ reflected the amount due as $212,720.06, consisting of $177,360.36 in principal and $35,359.70 in interest.[40] The sheriff set the sale of the Horsham Road property for January 29, 2020.[41] Attorney Somach mailed the Notice of Sheriff's Sale under Rule 3129.2 of the Pennsylvania Code and a Notice of Owner's Rights to Mr. Ahmed.[42] The Notice of Owner's Rights instructed Mr. Ahmed to call Attorney Somach to determine the required payment to prevent the sheriff's sale.[43] Mr. Ahmed received the notices on October 21, 2019.[44]

Mr. Ahmed did not try to contact West Coast since the attempted sale of the Horsham Road property in December 2018.[45] But he contacted Attorney Somach on January 27, 2020, the week of the sheriff's sale, to determine the amount needed to stop the sheriff's sale.[46] Attorney Somach returned Mr. Ahmed's call and left him a voicemail, explaining the payoff amount was approximately $283,000.[47] The next day—the day before the scheduled sheriff's sale—Mr. Ahmed emailed Attorney Somach, stating, "Hi, Richard. I got your voicemail yesterday about my

property…. Please tell me what is the amount I need to send you to stop the sheriff['s] sale and any other instructions to send the payment."[48] Attorney Somach emailed Mr. Ahmed less than half an hour later, stating "[a]ttached are the firm's wiring instructions. The total payoff of this account as of today is $284,000.00. The wire must be received today, otherwise, the property will be going to sheriff's sale tomorrow. Please advise as to when the wire is sent so that I can have our accounting department look for it."[49] Mr. Ahmed admits knowing Attorney Somach incorrectly reported his debt.[50] Mr. Ahmed remained in default on his loan obligations.[51]

Norris McLaughlin attended the sheriff's sale the next day. It announced an upset bid for the Horsham Road property for $295,262.90.[52] The sheriff sold the Horsham Road property to West Coast's lawyers at Norris McLaughlin for $1,978.68.[53] On June 22, 2020, West Coast sold the Horsham Road property for $280,280.[54]

### Mr. Ahmed sues West Coast and its lawyers.

Mr. Ahmed sued West Coast and Norris McLaughlin last July alleging they each violated the Fair Debt Collection Practices Act and the Pennsylvania Unfair Trade Practices and Consumer Protection Law.[55] Mr. Ahmed alleged West Coast "misapplied tens of thousands of dollars in [mortgage] payments" made during his bankruptcy in or about May 2016 and "provided a knowingly inaccurate Payoff Statement" in December 2018.[56]

Mr. Ahmed separately alleged conduct after the court dismissed his bankruptcy for failing to pay the trustee. He alleged Norris McLaughlin misrepresented the payment needed to stop the sheriff's sale, improperly announced an upset price at the sheriff's sale to discourage bidding, and failed to provide the amount needed to reinstate the loan.[57]

West Coast and Norris McLaughlin moved to dismiss the amended Complaint.[58] West Coast argued the debt collection claim should be dismissed as time-barred as to its conduct and

Mr. Ahmed did not sufficiently allege Norris McLaughlin's vicarious liability.[59] It further argued for dismissal of the Consumer Protection Law claim, arguing Mr. Ahmed is not a "consumer" and the economic loss doctrine barred the claim.[60] Norris McLaughlin made similar arguments.[61] We denied both motions and allowed the parties to proceed to discovery.[62] We agreed the statute of limitations barred Mr. Ahmed's allegations as to West Coast's specific conduct during the bankruptcy but concluded Mr. Ahmed plausibly alleged an agency relationship between West Coast and Norris McLaughlin for West Coast to be held vicariously liable for Norris McLaughlin's conduct.[63]

## II.    Analysis

Norris McLaughlin and West Coast now move for summary judgment on the remaining claims challenging the disclosures on the balance owed at the January 29, 2020 sheriff's sale.[64] Norris McLaughlin argues Mr. Ahmed's debt collection claim fails because it is not a debt collector, its communications with Mr. Ahmed were not attempts to collect a debt, and its mere communication of information provided by its client, West Coast, did not violate the law. It argues Mr. Ahmed's Consumer Protection Law claim fails because Mr. Ahmed failed to adduce specific facts as to violative conduct, Mr. Ahmed is not a consumer under the law, and Mr. Ahmed did not suffer damages because of its conduct.

West Coast first argues the *Rooker-Feldman* doctrine and res judicata bar Mr. Ahmed's claims. Even assuming those doctrines do not apply, West Coast argues Mr. Ahmed's Consumer Protection Law claim fails because Mr. Ahmed is not a consumer under the law and Mr. Ahmed fails to adduce evidence of the necessary elements of the law, including deceptive conduct, justifiable reliance, and ascertainable loss.[65]

We conclude genuine issues of material fact exist as to most of the debt collection claim requiring we review these issues after evaluating the credibility of witnesses and studying exhibits at our scheduled non-jury trial. But we need not resolve the Pennsylvania Consumer Protection Law claim at trial as Mr. Ahmed fails to show a disputed fact contrary to his admission of never relying on Norris McLaughlin and West Coast's alleged misrepresentations as required under the Consumer Protection Law.

### A.    The *Rooker-Feldman* doctrine and res judicata do not bar Mr. Ahmed's claims against West Coast.

West Coast first argues the *Rooker-Feldman* doctrine bars Mr. Ahmed's claims  regarding the 2019 sheriff's sale as  a  challenge to a state court foreclosure judgment.[66] West Coast further argues res judicata bars Mr. Ahmed's claims because the claims could have been litigated during the state court foreclosure proceedings but were not.[67] Mr. Ahmed argues his claims are not barred because they involve conduct occurring years after the foreclosure judgment and the writs of execution and do not challenge those underlying state court judgments.[68] He relatedly argues he could not have challenged this post-judgment conduct in the state courts.[69] We agree with Mr. Ahmed.

The *Rooker-Feldman* doctrine prohibits a district court from exercising subject matter jurisdiction in certain circumstances. The doctrine is "'confined to … cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'"[70] Our Court of Appeals states four requirements must be met for the doctrine to apply: "(1) the federal plaintiff lost in state court; (2) the plaintiff 'complain[s] of injuries caused by [the] state-court judgments'; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments."[71] The doctrine does

not apply when the plaintiff alleges injury caused by the defendant's conduct and not by the state court judgment.[72]

The *Rooker-Feldman* doctrine does not apply to bar claims where the alleged injury stems from collection practices used by debt collectors rather than from state court judgments. In *Rivera v. Ragan & Ragan, P.C.*, for example, Judge Kelly found the *Rooker-Feldman* doctrine did not apply to bar a consumer's debt collection claims against a law firm for its communications with the consumer after entry of a state court judgment against the consumer.[73] The consumer alleged he called the law firm to inquire about the judgment and various representatives from the law firm engaged in violative conduct, for example, by refusing to assist him with his inquiries and informing him they had very little information about his debt.[74] Judge Kelly concluded the *Rooker-Feldman* doctrine did not bar the claims because "[consumer] does not challenge the judgment against him in state court, but rather, only claims that [law firm]'s collection practices violated sections of the FDCPA."[75]

We disagree with West Coast's theory Mr. Ahmed's claims require us to review and reject earlier state court judgments. Mr. Ahmed's debt collection claim challenges Attorney Somach's alleged misrepresentation of the payoff amount and his alleged failure to inform him of reinstatement figures. He crucially does not challenge the amounts reflected in the underlying foreclosure judgment or writ of execution and instead challenges Norris McLaughlin's (and, by extension, West Coast's) post-judgment conduct. Mr. Ahmed's claim under the Consumer Protection Law similarly does not dispute the validity of an underlying state court judgment and instead challenges West Coast's admitted misapplication of payments, which occurred post-foreclosure. We need not review and potentially reject those underlying state court judgments to evaluate Mr. Ahmed's claims against West Coast.

West Coast's reliance on *Todd v. U.S. Bank, National Association* is misplaced.[76] The plaintiff in *Todd* asserted breach of contract and debt collection claims against a mortgage servicer and a law firm for (1) incorporating attorney's fees without a lodestar analysis in the default judgment entered in a foreclosure action and subsequently-issued writs of execution and (2) adding interest to the default judgment in various reissued writs.[77] Judge Jones dismissed the complaint, concluding the *Rooker-Feldman* doctrine deprived the court of jurisdiction over the claims.[78] Judge Jones found the claim regarding attorney's fees only challenged fees  already approved and finalized in the default judgment.[79] Judge Jones similarly found the claim as to interest challenged the underlying default judgment because the default judgment approved the accrual of interest sought by the defendants.[80] Unlike the plaintiff in *Todd*, Mr. Ahmed does not dispute the validity of the underlying state court judgments but instead disputes West Coast's application of payments and West Coast's and Norris McLaughlin's representations as to payoff amounts.

Res judicata does not bar Mr. Ahmed's claims for many of the same reasons. The doctrine of res judicata bars a party from initiating a second suit against the same adversary based on the same "cause of action" as the first suit.[81] Res judicata applies when three elements are met: (1) a final judgment on the merits in a prior suit involving; (2) the same parties or their privies; and (3) a subsequent suit based on the same cause of action.[82] "The doctrine of res judicata bars not only claims that were brought in a previous action, but also claims that could have been brought."[83]

Res judicata bars claims in this context when the claims are based on allegations relating to the underlying mortgage, events leading up to the execution of the mortgage or foreclosure, or the accuracy of the amounts sought or validity of the debt in the foreclosure action.[84] Mr. Ahmed brings different claims; he contends West Coast inflated the payoff amount by approximately $100,000 after the state court entered judgment in the foreclosure action. He does not dispute the

validity or amount of the judgment reached in the foreclosure action. Nor does he dispute the validity of the writ of execution. He instead contends Norris McLaughlin improperly inflated the payoff amount and failed to inform him of his right to reinstate his mortgage in its subsequent communications with him. Mr. Ahmed did not—and could not—bring these claims in state court proceedings.

> **B.     Norris McLaughlin is not entitled to judgment as a matter of law on most of Mr. Ahmed's Fair Debt Collection Practices Act claim.**

To prevail on his debt collection claim, Mr. Ahmed must prove (1) he is a consumer; (2) Norris McLaughlin is a debt collector; (3) Norris McLaughlin's challenged practice involves an attempt to collect a "debt" as the Act defines it; and (4) Norris McLaughlin violated a provision of the Fair Debt Collection Practices Act in attempting to collect the debt.[85] Norris McLaughlin argues Mr. Ahmed fails to prove his claim because it is not a debt collector, its communications with Mr. Ahmed do not qualify as attempts to collect a debt, and Mr. Ahmed cannot prove Norris McLaughlin violated the Act through alleged inaccuracies in the payoff amount or through failing to inform him of his right to reinstate his loan. We disagree with Norris McLaughlin as to the inaccuracies in the payoff amount but agree as to informing him of a right to reinstate the loan.

> **1.     Norris McLaughlin is a "debt collector" under the Act.**

Norris McLaughlin initially argues Mr. Ahmed's claim fails because it does not qualify as a "debt collector" under the Act as a matter of law.[86] It argues it does not regularly collect debts because debt collection constitutes "less than [two percent]" of the firm's practice.[87] Mr. Ahmed argues Norris McLaughlin is a debt collector because it admittedly handles hundreds of debt collection matters.[88] We agree with Mr. Ahmed.

The Act defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of debts, or

who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."[89] The Act does not define "regularly" but, as Mr. Ahmed points out, courts interpreting the term have developed two frameworks.[90] The "aggregate" framework considers the amount of debt collection performed in the aggregate and establishes percentages of how much debt collection activity qualifies as "regular," while the "frequency" framework focuses on the consistency of the defendant's debt collection, regardless of its relation to the defendant's other business activities.[91]

Our Court of Appeals has not yet adopted one framework but appears to endorse the "frequency" approach. In *Oppong v. First Union Mortgage Corp.*, for example, our Court of Appeals found a bank regularly engaged in debt collection practices—and therefore constituted a debt collector under the Act—because it handled hundreds of debt collection matters in a typical eighteen-month period, even though this constituted a small proportion of its overall business.[92] In *Silva v. Mid Atlantic Management Corp.*, Judge Kelly similarly found a law firm regularly engaged in debt collection practices by accepting at least ten debt collection matters annually for a couple of years.[93] Judge Kelly expressly rejected the law firm's argument it did not regularly engage in debt collection because these matters amounted to less than one percent of its total volume of cases and revenue.[94] Judge Kelly concluded debt collection services could be rendered "regularly" even though those services amount to a small fraction of a firm's total activity.[95]

Like the businesses in *Oppong* and *Silva*, Norris McLaughlin is a "debt collector" because it regularly handles debt collection matters. While these matters may amount to less than ten percent of Attorney Somach's practice and less than two percent of Norris McLaughlin's practice, Attorney Somach testified he has handled "hundreds" of debt collection matters since he joined the firm over ten years ago.[96] He further testified at least three other attorneys at the firm handle

similar matters.[97] This is sufficient evidence Norris McLaughlin "regularly" engages in debt collection practices such that it qualifies as a "debt collector" under the Act.

### 2. Norris McLaughlin's communications may constitute "attempts to collect a debt."

Norris McLaughlin next argues it did not violate the Act because it did not attempt to collect a debt.[98] It argues Attorney Somach's calls and emails leading to the sheriff's sale cannot, as a matter of law, be considered attempts to collect a debt because they only responded to Mr. Ahmed questions.[99] Mr. Ahmed argues he called Attorney Somach only because the notices he received from Norris McLaughlin directed him to call to determine the amount owed.[100] We agree with Mr. Ahmed.

In determining whether a communication is made in furtherance of the collection of debt, courts draw a distinction between a communication initiated by a debt collector and a communication sent in response to a consumer inquiry.[101] Our Court of Appeals has not yet opined on the issue. As Norris McLaughlin concedes, two district courts in this Circuit have found a debt collector's response to a consumer inquiry can constitute an attempt to collect a debt.[102] In *Trunzo v. City Mortgage*, for example, Judge Hornak found a responsive letter from a law firm sent to homeowners providing instructions about how to avoid foreclosure could constitute an attempt to collect a debt.[103] Judge Hornak explained that, while the law firm's letter explicitly stated it was sent in response to an inquiry, it also contained a disclaimer explaining, "[p]lease be advised that this firm is a debt collector attempting to collect a debt …," making clear the letter also constituted a collection attempt.[104] Judge Hornak also found it significant that the mortgage servicer—the law firm's client—expressly directed the homeowners to contact the law firm for inquiries  about the foreclosure notice they received.[105] He explained, "[t]he fact that [the consumer] took the bait and reached out to [the law firm] does not transform the purpose of [the mortgage servicer and law

firm's] actions—the collection of a delinquent mortgage debt—into a benign exchange of helpful information."[106]

Judge Conaboy in *Chlubicki v. PennyMac Loan Services, LLC* also found responses to consumer-initiated phone calls could constitute attempts to collect a debt under the Act because, during the phone call, the debt collectors misrepresented that a loan was in active foreclosure and asserted that the consumer should immediately bring the loan current to avoid the consequences of foreclosure.[107] Judge Conaboy, explicitly agreeing with Judge Hornak's reasoning in *Trunzo*, explained "[n]othing in [the Act] compels, or even suggests, that a debt collector may enjoy 'open season' on a consumer who initiates contact with a legitimate concern."[108]

Norris McLaughlin's attempts to distinguish its conduct from *Trunzo* and *Chlubicki* are unavailing. Even assuming Mr. Ahmed initiated the communications, we agree with Judges Hornak and Conaboy. Norris McLaughlin is not immune from liability under the Act because its made alleged false statements  in response to questions. Like the mortgage servicer in *Trunzo*, Norris McLaughlin expressly instructed Mr. Ahmed to call Attorney Somach. In response to Mr. Ahmed's inquiry, Attorney Somach provided the payoff amount—which Mr. Ahmed disputes the accuracy of—and instructed this amount would need to be wired to his firm the next day to avoid the sheriff's sale. Attorney Somach's voicemail and subsequent email, like the communications at issue in *Trunzo* and *Chlubicki*, could easily constitute a response to a consumer inquiry as well as a collection attempt.

### 3.     Norris McLaughlin may be held liable for inaccuracies in loan calculations.

Norris McLaughlin next argues Mr. Ahmed's claim fails because Norris McLaughlin did not service the mortgage and is not responsible for alleged miscalculations provided by its client

West Coast.[109] Mr. Ahmed argues Norris McLaughlin can be held liable under the Act for providing false information.[110] We agree with Mr. Ahmed.

Norris McLaughlin misconstrues the plain language of the Act. The Act expressly extends to persons "who regularly collect[] or attempt[] to collect … debts *owed … another*."[111] It therefore applies to law firms who are engaged to collect debts owed to their client mortgage servicers. The Act further imposes liability without proof of an intentional violation.[112] Section 1692(e)(2)(A), which makes it unlawful for a debt collector to make a "false representation"  as to "the character, amount, or legal status of any debt" when attempting to collect a debt, does not require knowledge by the debt collector. It instead "creates a straightforward, objective standard" and "[n]othing suggests that an allowance is to be made for a defendant's lack of knowledge or intent."[113] Norris McLaughlin cannot claim ignorance as a defense.

Our Court of Appeals's decision in *McLaughlin v. Phelan Hallihan & Schmieg, LLP* is instructive.[114] In *McLaughlin*, a debtor brought claims under various provisions of the Act, including Section 1692e(2), against a law firm retained by the debtor's mortgage company, alleging a letter sent to him by the law firm misrepresented the amount due on the loan.[115] The law firm argued the dismissal of the claim should be affirmed, in part because the letter only contained estimates of the amount owed.[116] Our Court of Appeals disagreed with the law firm's characterization of the letter as only setting forth estimates and concluded the debtor stated a claim under the Act.[117] In doing so, the court of appeals explained, "[a]s the drafter of the letter, [the law firm] is responsible for its content and for what the least sophisticated debtor would have understood from it."[118]

The cases cited by Norris McLaughlin are inapposite. In *Martsolf v. JBC Legal Group, P.C.*, for example, a debtor alleged a debt collector violated the Act by, among other things,

mispresenting an attorney had reviewed her debts and reached an opinion they were accurate under Section 1692e(3) of the Act, which prohibits a debt collector from "false[ly] representing or impl[ying] that any individual is an attorney or that any communication is from an attorney" if, in fact, no attorney reviewed the debt.[119] Judge Conner held an attorney debt collector who represents anotherattorney  personally evaluated the debtor's accounts must have actually performed such a review or otherwise included a disclaimer describing the level of the attorney's involvement in analyzing the debt.[120]

In contrast, Mr. Ahmed does not contend Norris McLaughlin misrepresented the nature of its review of the debt owed in violation of Section 1692e(3). He instead contends Norris McLaughlin misrepresented the amount of debt owed. As explained by our Court of Appeals in *McLaughlin*, the law firm—acting as a debt collector—is responsible for its communications to debtors; a lack of knowledge or intent does not absolve the law firm of liability. Norris McLaughlin can be held liable for inaccuracies in the payoff amount it told Mr. Ahmed.

### 4. Norris McLaughlin did not violate the Act by failing to inform Mr. Ahmed of his right to reinstate his loan.

Norris McLaughlin finally argues it did not violate the Act by failing to inform Mr. Ahmed of his right to reinstate his loan because (1) Mr. Ahmed never requested reinstatement figures and (2) it does not have a duty to advise Mr. Ahmed of his contractual rights.[121] Mr. Ahmed argues, without support, Norris McLaughlin can be liable for misleading him by failing to provide him a reinstatement figure.[122] We agree with Norris McLaughlin.

We analyze communications from debt collectors to consumers from the perspective of the "least sophisticated debtor."[123] This low standard "comports with the basic purpose of the [Act]: …to protect all consumers, the gullible as well as the shrewd … from abusive debt collection practices."[124] It also, however, "prevents liability for bizarre or idiosyncratic interpretations of

15

collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care."[125]

Mr. Ahmed fails to cite authority—nor can we find any—suggesting a law firm collecting debt on behalf of a client is required to advise the consumer of his right to negotiate. We cannot find authority suggesting Congress requires debt collectors to become mandated negotiators including offering reinstatement of his mortgage. Mr. Ahmed contacted Attorney Somach in accord with the Notice of Owner's Rights detailing actions Mr. Ahmed needed to take to stop the sheriff's sale. Attorney Somach responded by providing him a payoff amount. While Norris McLaughlin may be held liable for inaccurate payoff numbers provided by Attorney Somach in response to Mr. Ahmed's questions, it cannot be held liable for also failing to affirmatively advise Mr. Ahmed of his options beyond those detailed in the Notice of Owner's Rights. Mr. Ahmed does not claim the Notice of Owner's Rights is misleading. He asks we graft additional rights. We decline to do so.

### C. We grant summary judgment dismissing Mr. Ahmed's Consumer Protection Law claim.

Mr. Ahmed claims West Coast and Norris McLaughlin violated Pennsylvania's Consumer Protection Law by, among other things, engaging in fraudulent or deceptive conduct creating a likelihood of confusion or misunderstanding. We disagree because Mr. Ahmed admits West Coast's and Norris McLaughlin's representations never deceived him. He knew they were wrong all along.

Pennsylvania's Consumer Protection Law seeks to prevent "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce …."[126] It provides a private cause of action for "[a]ny person who purchases or leases goods or services primarily for personal, family, or household purposes and thereby suffers any

ascertainable loss of money or property" due to the seller's unfair or deceptive acts or practices.[127] To establish liability under the Consumer Protection Law's catchall provision, Mr. Ahmed must adduce evidence demonstrating: (1) a deceptive act likely to deceive a consumer acting reasonably under similar circumstances; (2) justifiable reliance; and (3) justifiable reliance caused ascertainable loss.[128]

Norris McLaughlin and West Coast argue Mr. Ahmed's claim under the Consumer Protection Law fails because he is not a consumer, he cannot (as a non-resident) assert a claim against a non-resident company, he fails to demonstrate justifiable reliance on the alleged misrepresentations and resulting injury from that reliance, and he does not specifically allege any deceptive conduct.[129] We find Mr. Ahmed fails to adduce evidence of justifiable reliance or resulting injury. He admittedly did not rely on the alleged misrepresentations because he knew all along of the wrong numbers. He did nothing in reliance because he did not believe the numbers. The Consumer Protection Law is not strict liability for false information. It requires a justifiable reliance on the false statements causing the consumer harm. Mr. Ahmed cannot meet this burden by his admission. We grant summary judgment on this claim without reaching the merits of the remaining arguments.

West Coast argues Mr. Ahmed's claim fails because he has not proven he justifiably relied on an alleged misrepresentations made, and instead testified he always knew their representations about the amount owed on the loan were incorrect.[130] Mr. Ahmed argues he has demonstrated justifiable reliance because West Coast's conduct "caused [Mr. Ahmed] to cancel the sale."[131] We agree with West Coast.

To prevail on a claim under the Consumer Protection Law, Mr. Ahmed must make an affirmative showing of "justifiable reliance."[132] "Evidence of reliance must go beyond simply a

causal connection between the misrepresentation and the harm; a plaintiff must 'show that he justifiably bought the product in the first place (or engaged in some other detrimental activity) because of the misrepresentation.'"[133] While justifiable reliance is typically a question of fact, we may grant summary judgment where a plaintiff fails to adduce sufficient evidence of justifiable reliance.[134]

Whether reliance on a representation is justified "depends on whether the recipient knew or should have known that the information supplied was false."[135] "If a man knows the truth about the representation, he is neither deceived nor defrauded, and any loss he may sustain is in effect self-inflicted."[136] "This is because 'knowledge negates the affirmative element of reliance.'"[137]

Judge Brody's dismissal of an unfair trade practice claim in *Plumbers' Local Union No. 690 Health Plan v. Apotex Corp.* is instructive.[138] In *Plumbers*, a health insurance plan alleged drug manufacturers artificially inflated the average wholesale prices for their drugs and the plan suffered harm by overpaying providers using a reimbursement formula based on the allegedly inflated average wholesale prices.[139] Judge Brody dismissed the claim for lack of justifiable reliance because the plan failed to allege it ever believed the average wholesale prices provided by the manufacturers were the actual average wholesale price of their drugs.[140] Judge Brody explained the plan could not credibly make such an allegation because the plan's involvement in earlier related class actions regarding a scheme to inflate average wholesale prices "clearly demonstrates that [the plan] knew the [average wholesale prices] were not the actual average wholesale prices."[141]

Like the plan in *Plumbers*, Mr. Ahmed fails to demonstrate he justifiably relied on West Coast's representation of the payoff amount because he never believed it. Ahmed swore he consistently knew the amounts represented by West Coast as due on the loan were inaccurate. Mr.

Ahmed testified, for example, he disagreed with the amounts West Coast represented as owing in its statements soon after it took over the servicing rights for his loan.[142] Mr. Ahmed further swore he knew of the falsity of the $254,000 payoff figure provided by West Coast in December 2018 because "those three, four things [West Coast] calculated, the late payment, the included interest, I knew that was incorrect" and even testified he could easily calculate the correct amount due himself.[143] As Judge Brody found in *Plumbers*, Mr. Ahmed could not have justifiably relied on West Coast's representations as to amounts due shortly before the sheriff's sale in 2019 because he testified he never believed West Coast accurately accounted for the debt. At most, he demonstrates some connection between West Coast's payoff representation and his property sale falling through. But this connection is insufficient to demonstrate justifiable reliance.

This deficiency also exists as to Mr. Ahmed's claim against Norris McLaughlin. Mr. Ahmed's deposition testimony as to the $284,000 payoff figure provided by Attorney Somach undermines an assertion of justifiable reliance. When asked whether the $284,000 figure looked correct to him, Mr. Ahmed said "[n]o."[144] When asked what specifically was incorrect, Mr. Ahmed explained, "[t]here were added fees and charges. It was incorrect."[145] Mr. Ahmed's knowledge regarding the veracity of the payoff figure precludes him from claiming he justifiably relied on the payoff amount to his detriment. At most, Mr. Ahmed establishes a connection between the payoff figure and his inability to stop the sheriff's sale. As explained above, this is insufficient to establish justifiable reliance as required under the Consumer Protection Law.

## III. Conclusion

We grant in part West Coast and Norris McLaughlin's motions for summary judgment. West Coast and Norris McLaughlin are entitled to summary judgment as to the claim under the Consumer Protection Law because Mr. Ahmed fails to adduce evidence he justifiably relied on an

alleged misrepresentation. He admits he did not.  But we find genuine issues of material fact exist

as to the debt collection claim (other than failure to offer reinstatement) requiring we resolve these

issues in the non-jury trial beginning June 9, 2021.

---

[1] Our Policies require a Statement of Undisputed Material Facts ("SUMF") and an appendix in support of summary judgment. West Coast filed its Motion and brief in support of summary judgment and SUMF at ECF Doc. Nos. 72 and 73. Norris McLaughlin filed its Motion and brief in support of summary judgment and SUMF at ECF Doc. Nos. 75 and 76. Mr. Ahmed responded to the motions at ECF Doc. Nos. 83 and 84. Norris McLaughlin and West Coast filed a Joint Appendix at ECF Doc. No. 71. We refer to the Defendants' Joint Appendix as "Appx." Mr. Ahmed filed supplemental appendices at ECF Doc. Nos. 85 and 86-1. We cite to his appendices using their ECF docket entry numbers and corresponding pagination.

[2] Appx. 35a, 42a.

[3] Appx. 133a–148a.

[4] Appx. 151a–154a.

[5] Appx. 136a.

[6] *Id.*

[7] Appx. 13a ¶ 12.

[8] *Id.*

[9] *Id.*

[10] Appx. 13a.

[11] Appx. 82a, 441a, 476a–479a, 480a–488a.

[12] Appx. 11a ¶ 3.

[13] Appx. 13a ¶¶ 14, 18.

[14] *Id.* ¶ 18.

[15] Appx. 163a–166a.

[16] Appx. 496a–498a.

[17] Appx. 499a–501a.

[18] *Id.*

[19] Appx. 175a.

[20] Appx. 216a–220a.

[21] Appx. 62a.

[22] Appx. 506a. ¶¶ 9, 12.

[23] ECF Doc No. 85-1 at 16-17. Mr. Bustamante explained he caught this mistake during the litigation process. *Id.* at 17.

[24] Appx. 65a–66a.

[25] Appx. 66a–67a.

[26] Appx. 66a–67a.

[27] Appx. 67a–71a.

[28] Appx. 71a.

[29] Appx. 17a ¶ 43.

[30] Appx. 368a–374a.

[31] Appx. 509a–513a.

[32] Appx. 73a.

[33] Appx. 514a–515a.

[34] Appx. 74a.

[35] Appx. 389a–390a.

[36] Appx. 543a.

[37] Appx. 541, 544a.

[38] Appx. 542a.

[39] Appx. 389a–390a.

---

[40] *Id.*

[41] Appx. 391a.

[42] Appx. 450a–456a.

[43] Appx. 455a.

[44] *Id.*

[45] Appx. 123a.

[46] Appx. 75a; Appx. 568a.

[47] Appx. 116a–117a. In his voicemail, Attorney Somach specifically stated, "Mr. Ahmed, this is Attorney Rich Somach. You called me this morning about your property that is on the sheriff's sale list for Wednesday, I think. 2625 Horsham Road, Hatboro. I need you to return my call at (484) 765-2291 and provide me with an e-mail address so that I can send you wire instructions. Because if this is to be taken off the list on Wednesday, you need to wire this money to me today or tomorrow at the latest. Tomorrow by noon. Because if we do not have the money here, we will not continue the sale. And I'm going to tell you that your payoff is approximately $283,000. $283,000. So that's what you should be prepared to be sending us. If there's any question about that, please call me right away. (484) 765-2291. If I do not hear from you today, then I will assume you're not paying this off and it will go to sale on Wednesday as scheduled." Appx. 457a.

[48] Appx. 459a.

[49] Appx. 458a.

[50] Appx. 119a.

[51] Appx. 120a.

[52] Appx. 557a–558a.

[53] Appx. 410a.

[54] Appx. 424a–427a.

[55] ECF Doc. No. 1. Mr. Ahmed subsequently filed an amended complaint on October 29, 2020. ECF Doc. No. 23.

[56] ECF Doc. No. 23 ¶¶ 35, 41.

[57] *Id.* ¶¶ 52, 55, 58.

[58] ECF Doc. Nos. 27-28.

[59] ECF Doc. No. 28-1 at 6–10.

[60] *Id.* at 10–14.

[61] See ECF Doc. No. 27-1.

[62] ECF Doc. No. 29.

[63] *Id.* at 1 n.2.

[64] Summary judgment is proper when "the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party.'" *Pearson v. Prison Health Serv.,* 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011)). On a motion for summary judgment, "we view the facts and draw all reasonable inferences in the light most favorable to the nonmovant." *Pearson*, 850 F.3d at 533-34 (3d Cir. 2017) (citing *Scott v. Harris*, 550 U.S. 372, 378 (2007)). "The party seeking summary judgment 'has the burden of demonstrating that the evidentiary record presents no genuine issue of material fact.'" *Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016) (quoting *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015)). If the movant carries its burden, "the nonmoving party must identify facts in the record that would enable them to make a sufficient showing on essential elements of their case for which they have the burden of proof." *Willis*, 808 F.3d at 643 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If, after adequate time for discovery, the nonmoving party has not met its burden, pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against the nonmoving party." *Willis*, 808 F.3d at 643 (citing *Celotex Corp.*, 477 U.S. at 322-323).

[65] West Coast also argues Mr. Ahmed's debt collection claim fails because Norris McLaughlin is not a "debt collector" and otherwise incorporates Norris McLaughlin's arguments as to the debt collection claim.

[66] ECF Doc. No. 72 at 4-7.

[67] *Id.* at 7-8.

[68] ECF Doc. No. 83 at 10—14.

[69] *Id.* at 15–16.

[70] *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 164 (3d Cir. 2010) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

[71] *Id.* at 166 (quoting *Exxon Mobil*, 544 U.S. at 284).

[72] *Id.* at 167.

[73] No. 10-1619, 2010 WL 2635790, at *2–5 (E.D. Pa. June 25, 2010).

[74] *Id.* at *1.

[75] *Id.* at *4.

[76] No. 15-2866, 2016 WL 127543, at *5 (E.D. Pa. Jan. 12, 2016).

[77] *Id.*

[78] *Id.*

[79] *Id.*

[80] *Id.*

[81] *Duhaney v. Attorney General of U.S.*, 621 F.3d 340, 347 (3d Cir. 2010) (citing *In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008)).

[82] *Id.*

[83] *Id.* (quoting *In re Mullarkey*, 536 F.3d at 225).

[84] *See, e.g., Easley v. New Century Mortg. Corp.*, 394 F. App'x 946, 948 (3d Cir. 2010); *Rhodes v. U.S. Bank National Ass'n*, 238 F. Supp. 3d 648, 651 (E.D. Pa. 2017).

[85] *Jensen v. Pressler & Pressler*, 791 F.3d 413, 417 (3d Cir. 2015).

[86] ECF Doc. No. 75-1 at 17–18.

[87] *Id.* at 18. Norris McLaughlin also argues it falls under the process server exception to the "debt collector" definition, at least with respect to the two notices sent to Mr. Ahmed; the Notice of Sheriff's Sale and the Notice of Owner's Right. The Act specifically exempts from its definition of debt collector "any person while serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt." 15 U.S.C. § 1692a(6)(D). This exception only applies to those persons who physically serve or attempt to serve legal process. *See Kananavicius v. JP Morgan Chase Bank, N.A.*, No. 15-1823, 2015 WL 5093050, at *4 (E.D. Pa. Aug. 28, 2015). It does not extend to those who hire or instruct a process server or those who prepared the communication served on the consumer. *See Flamm v. Sarner & Assocs., P.C.*, No. 02-4302, 2002 WL 31618443, at *5 (E.D. Pa. Nov. 6, 2002); *Romea v. Heiberger & Assocs.*, 163 F.3d 111, 117 (2d Cir. 1998). Norris McLaughlin therefore does not fall under this exception.

[88] ECF Doc. No. 84 at 11–18.

[89] 15 U.S.C. § 1692(a)(6).

[90] *See Coles v. Zucker Goldberg & Ackerman*, No. 14-1612, 2015 WL 4578479, at *6 (D.N.J. July 29, 2015).

[91] *Id.*

[92] 215 F. App'x 114, 118–20 (3d Cir. 2007).

[93] 277 F. Supp. 2d 460, 465–66 (E.D. Pa. 2003).

[94] *Id.*

[95] *Id.* at 466.

[96] Appx. 542a.

[97] Appx. 543a.

[98] ECF Doc. No. 75-1 at 18–22.

[99] *Id.*

[100] ECF Doc. No. 84 at 21.

[101] *See Trunzo v. Citi Mortg.*, 876 F. Supp. 2d 521, 535-36 (W.D. Pa. 2012) (citing *DeHart v. U.S. Bank, N.A. ND*, 811 F. Supp. 2d 1038, 1056 (D.N.J. 2011)).

[102] *Id.* at 536-37; *Chlubicki v. PennyMac Loan Servs. LLC*, No. 17-1485, 2018 WL 1251986, at *2-3 (M.D. Pa. Mar. 12, 2018).

[103] *Trunzo,* 876 F. Supp. 2d at 536-37.

[104] *Id.*

[105] *Id.* at 537.

[106] *Id.* (further noting "[t]he creation of such a large safe harbor for debt collectors under the [Act] would seemingly cut against the purpose of the statute, which is to protect consumers and provide a remedy for those individuals 'who have been subjected to abusive, deceptive, or unfair debt collection practices by debt collectors.'") (citing 15 U.S.C. § 1692(a), (b)).

[107] *Chlubicki* 2018 WL 1251986 at *2-3.

[108] *Id.* at *3.

[109] ECF Doc. No. 75-1 at 22-25.

[110] ECF Doc. No. 84 at 23.

[111] 15 U.S.C. § 1692a(6) (emphasis added); *see also Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1722 (2017) (explaining this language "by its plain terms … seems to focus our attention on third party collection agents working for a debt owner …").

[112] *See Glover v. F.D.I.C.*, 698 F.3d 139, 149 (3d Cir. 2012) (citing *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 368 n.7 (3d Cir. 2011)).

[113] *Id.*

[114] 756 F.3d 240 (3d Cir. 2014).

[115] *Id.* at 242–43.

[116] *Id.* at 246.

[117] *Id.*

[118] *Id.*

[119] No. 04-1346, 2008 WL 275719, at *7–10 (M.D. Pa. Jan. 30, 2008).

[120] *Id.* at *8.

[121] ECF Doc. No. 75-1 at 25–26.

[122] ECF Doc. No. 84 at 23.

[123] *Brown v. Card Service Center*, 464 F.3d 450, 453 (3d Cir. 2006).

[124] *Id.* (quotations and citations omitted).

[125] *Id.* (citations and quotations omitted).

[126] 73 Pa. Stat. Ann. § 201-3(a).

[127] 73 Pa. Stat. Ann. § 201-9.2(a).

[128] *Slapikas v. First American Title Ins. Co.*, 298 F.R.D. 285, 292 (W.D. Pa. Mar. 7, 2014) (citing *Seldon v. Home Loan Servs.*, 647 F. Supp. 2d 451, 470 (E.D. Pa. 2009)).

[129] *See* ECF Doc. No. 75-1 at 27-30; ECF Doc. No. 72 at 13-19.

[130] ECF Doc. No. 72 at 15–17.

[131] ECF Doc. No. 83 at 22–24.

[132] *Davis v. Bank of Am., N.A.*, No. 13-5396, 2016 WL 427049, at *5 (E.D. Pa. Feb. 3, 2016) (citing *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 219 (3d Cir. 2008)).

[133] *Slapikas,* 298 F.R.D. at 292 (quoting *Slemmer v. McGlaughlin Spray Foam Insulation, Inc.*, No. 12–6542, 2013 WL 3380590, at *6 (E.D. Pa. July 8, 2013)).

[134] *See, e.g., Chandler v. L'Oreal USA, Inc.*, 340 F. Supp. 3d 551, 567-68 (W.D. Pa. 2018).

[135] *Corsale v. Sperian Energy Corp.*, 412 F. Supp. 3d 556, 566 (W.D. Pa. 2019) (quoting *Porreco v. Porreco*, 811 A.2d 566, 571 (Pa. 2002)).

[136] *Id.* (quoting *Emery v. Third Nat'l Bank of Pittsburgh*, 162 A. 281, 284 (Pa. 1932)).

[137] *Plumbers' Local Union No. 690 Health Plan v. Apotex Corp.*, No. 16-665, 2017 WL 4235773, at *7 (E.D. Pa. Sept. 25, 2017) (quoting *City of Phila. v. Lead Indus. Ass'n*, No. 90-7064, 1992 WL 98482, at *3 n.4 (E.D. Pa. Apr. 23, 1992)).

[138] *Id.* at *7–8.

[139] *Id.*

[140] *Id.* at *8.

[141] *Id.*

[142] Appx. 78a.

[143] Appx. 67a, 71a.

[144] Appx. 119a.

[145] *Id.*